IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dahlia DOE, et al., | ) |
| *Plaintiffs*, | ) No. 1:25-cv-08686 |
| v. | ) |
| Kristi NOEM et al., | ) |
| *Defendants.* | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO PROCEED UNDER PSEUDONYMS**

Plaintiffs are seven Syrian citizens with Temporary Protected Status ("TPS") in the United States. Plaintiffs ask this Court to grant them leave to proceed in this case using pseudonyms because (1) they face a significant possibility of government retaliation and abuse by private actors in the United States if their participation in this lawsuit is made public; (2) they would also face a serious threat of violence because of that participation if they are removed to Syria; (3) the case involves Plaintiffs' immigration status and other sensitive personal information; (4) Defendants will not be prejudiced by Plaintiffs' anonymity within the case; (5) the public has a strong interest in lawsuits that challenge government conduct, which would be chilled if Plaintiffs are forced to reveal their identities; and (6) other relevant factors identified by the Second Circuit also favor anonymity.

**ARGUMENT**

Although the general rule is that complaints state the names of the parties, *see* Fed. R. Civ. P. 10(1), this Court has the discretion to allow a plaintiff to proceed anonymously, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). The Second Circuit permits the

1

use of pseudonyms when "the plaintiff's interest in anonymity" outweighs "the public interest in disclosure and any prejudice to the defendant." *Id.* While "non-exhaustive," the list of factors relevant to this inquiry includes: (1) "whether the litigation involves matters that are highly sensitive and of a personal nature"; (2) the "risk of retaliatory physical or mental harm" or "other harms" to the plaintiffs if their identity is disclosed; (3) "whether the plaintiff is particularly vulnerable"; (4) whether the suit challenges "the actions of the government or [those] of private parties"; (5) the nature and extent of any prejudice anonymity would cause the defendants; (6) "whether the plaintiff's identity has thus far been kept confidential"; (7) the strength of the public's interest in disclosure; and (8) "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *Id.* at 190 (citation modified).

Courts across the country have recognized that the relevant factors favor anonymity when vulnerable noncitizens sue the government and fear serious retaliation such as deportation and imprisonment. *See, e.g.*, *Hisp. Int. Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1247 n.8 (11th Cir. 2012); *Lozano v. City of Hazelton*, 620 F.3d 170, 195 (3d Cir. 2010), *vac'd on other grounds*, 563. U.S. 1030 (2011). And recognizing the risks posed by the current, volatile political environment, numerous federal courts have granted anonymity to noncitizens challenging restrictive immigration policies. This includes three courts that granted motions to use pseudonyms in cases challenging other TPS terminations. *See Nat'l TPS All. v. Noem*, No. 3:25-cv-5687 (N.D. Cal. July 8, 2025) (Thompson, J.), Dkt. 26; *Nat'l TPS All. v. Noem*, No. 3:25-cv-1766 (N.D. Cal. Mar. 12, 2025) (Chen, J.), Dkt. 70; *Haitian-Americans United Inc. v. Trump*, No. 1:25-cv-10498 (D. Mass. Mar. 4, 2025), Dkt. 7.

The same protection is warranted here. Over the past year, Defendants have indiscriminately imprisoned and deported countless noncitizens, including many who had simply appeared at courthouses to seek protection. *See, e.g.*, Compl., *Immigr. Advocs. Resp. Collaborative*

*v. U.S. Dep't of Just.*, No. 25-cv-2279 (D.D.C. July 16, 2025), Dkt. 1 (challenging these policies). Defendants have also retaliated against noncitizen advocates who challenge these repressive measures as well as other government actions. *See, e.g.*, Pet. for Writ of Habeas Corpus, *Guevara v. Sterling*, No. 5:25-cv-86, (S.D. Ga. Aug. 20, 2025), Dkt. 1; *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *3-4 (4th Cir. July 1, 2025); *Öztürk v. Hyde*, 779 F. Supp. 3d 462, 489-92 (D. Vt. 2025). In these circumstances, a requirement that noncitizens disclose their identities to the executive branch in order to challenge policy decisions would significantly chill noncitizens' ability to defend and vindicate their constitutional and statutory rights. It is thus unsurprising that, as shown below, the factors the Second Circuit has identified weigh strongly in favor of allowing the Plaintiffs to proceed with this case using pseudonyms.

I.   **This Case Involves Highly Personal and Sensitive Matters, and Plaintiffs Face a Severe Risk of Harm if Their Identities Are Disclosed.**

Most importantly, Plaintiffs would face a significant risk of physical and mental harm, including retaliatory harm, if their identities were disclosed publicly. All plaintiffs greatly fear that if their names become public, they will become obvious targets of immigration enforcement, confinement, and deportation because they have challenged U.S. government policy. Dahlia Doe Decl. ¶¶ 30-32; Sara Doe Decl. ¶ 23-24; Laila Doe ¶ 23; Nesma Doe Decl. ¶¶ 21-22; Waleed Doe Decl. ¶ 24-26; Mustafa Doe Decl. ¶ 30-32; Ahmad Doe Decl. ¶¶ 25-27.[1] For example, Laila Doe has expressed fears of immigration enforcement based on the recent targeting of Syrian green-card

---

[1] Plaintiffs' declarations under proposed Doe pseudonyms are provided as exhibits to the attorney declaration of Guadalupe Aguirre filed with this motion. Copies of the declarations with Plaintiffs' true and correct signatures are in the possession of Plaintiffs' counsel and can be furnished to the Court upon request. Plaintiffs are willing to disclose their identities to Defendants' counsel under the terms of a suitable protective agreement that would prevent counsel from directly or indirectly disclosing Plaintiffs' identities to any third parties, including any government officials, employees, or contractors at the U.S. Department of Homeland Security, the Executive Office for Immigration Review, or who are otherwise involved in immigration enforcement actions or the adjudication of immigration benefit applications.

holders with no criminal history in the Chicago area where she lives. Laila Doe Decl. ¶ 23. Several Plaintiffs have pending applications for other forms of immigration status or are in the process of applying for immigration relief, and they fear that by speaking out through this lawsuit, any applications for alternative status could be jeopardized. Dahlia Doe Decl. ¶ 8; Sara Doe ¶ 11-12; Nesma Doe Decl. ¶ 8; Laila Doe Decl. ¶ 9; Mustafa Doe Decl. ¶ 11; Ahmad Doe Decl. ¶ 9-10.

As other courts have recognized, this "fear of retaliation is not speculative; the news is replete with reports of deportations, and the defendants have not assured the plaintiffs they will not retaliate against them." *CASA, Inc. v. Trump*, No. CV DLB-25-201, 2025 WL 2263001, at *13 (D. Md. Aug. 7, 2025); *see, e.g.*, *Does 1-158 v. Rubio*, No. 25-3032, 2025 WL 2709775, at *2 (D.D.C. Sept. 23, 2025) ("retaliatory arrest, deportation, or other adverse immigration actions"); *Doe #1 v. Noem*, No. 25-cv-317-wmc, 2025 WL 1207190, at *1 (W.D. Wis. Apr. 25, 2025) ("imminent arrest and detention" and "the possibility of being deported to a country other than their country of origin"). Courts have also recognized "recent high-profile immigration cases where other litigants have faced" abuse and intimidation because of their immigration status. *Molina v. U.S. Dep't of Homeland Sec.*, No. 25-3417, 2025 WL 2800807, at *1 (D.D.C. Oct. 1, 2025). As a result, numerous courts have provided anonymity to noncitizens suing the government based on the risk of "harassment, intimidation, and/or doxing" from non-governmental actors. *See, e.g.*, *Doe v. Noem*, No. 2:25-cv-00633-DGE, 2025 WL 1295664, at *3 (W.D. Wash. May 5, 2025) (citing cases).

In addition to facing retaliation in this country, Plaintiffs would also face a risk of retaliatory harm in Syria if returned there and their participation in this lawsuit were to become known to the Syrian government and/or to private actors. For example, Mustafa Doe, a member of the LGBTQI community, is vulnerable to prosecution by the Syrian authorities because of his sexual orientation if his identity is known. Mustafa Doe Decl. ¶ 20; 33. As a Christian and thus a

4

member of a minority community that has faced hostility in Syria, Dahlia Doe would face heightened risk of targeting if identified. Dahlia Doe Decl. ¶ 14; 33. Nesma Doe fears that as an elderly single woman with American relatives, she could be viewed as having access to financial resources and become the target of bad actors seeking ransom from her family. Nesma Doe Decl. ¶ 23. Sara Doe has already been targeted in Syria for her work in the medical field; exposure of her identity if she is forced to return will place her in danger. Sara Doe Decl. ¶ 6. Indeed, the very fact of speaking publicly about dangers in Syria, as all Plaintiffs have through this lawsuit, could be seen as criticism of the authorities or armed groups, exposing every Plaintiff to retaliation if their identities in this lawsuit become public. Sara Doe Decl. ¶ 25; Laila Doe Decl. ¶ 24; Waleed Doe Decl. ¶ 27; Ahmad Doe Decl. ¶ 28; Dahlia Doe Decl. ¶ 33-24. For similar reasons, the federal courts routinely grant anonymity to people seeking asylum who challenge government policies in court. *See, e.g.*, *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. 25-cv-306 (D.D.C. February 20, 2025), Dkt. 17; *Las Americas Immigrant Advoc. Ctr. v. DHS*, No. 24-cv-1702 (D.D.C. November 18, 2024), Dkt. 60; *J.G.G. v. Trump*, No. 25-cv-766 (D.D.C. May 8, 2025), Dkt. 117; *N.L.A. v. Holder*, 744 F.3d 425, 428 n.1 (7th Cir. 2014); *Doe v. Holder*, 736 F.3d 871, 872 n.1 (9th Cir. 2013); *Doe v. Holder*, 651 F.3d 824, 826 (8th Cir. 2011).

It is not only the individual Plaintiffs but their family members who would face a significant risk of retaliatory harm if Plaintiffs' identities were known to the public. Laila Doe's minor daughter, a high school student in Illinois, also has TPS, and exposing her mother's identity within this lawsuit would put her minor daughter in the public eye and therefore at risk of targeting by immigration authorities in the United States. Laila Doe Decl. ¶¶ 3, 12. Waleed Doe's wife, who is the mother of his three U.S. citizen children, is also a TPS holder. Waleed Doe Decl. ¶¶ 4-5. Publication of his identity within this lawsuit would put his wife, too, at risk of increased enforcement that would leave his children, ages nine months to seven years old, without both their

parents. *Id*. at ¶¶ 23-24. Ahmad Doe is pursuing alternative status for himself and his wife, who does not have TPS, and exposure of his identity within the lawsuit could similarly expose her to targeted immigration enforcement in the U.S. Ahmad Doe Decl. ¶ 8.

Plaintiffs' claims also involve highly sensitive and personal information. This includes their immigration status: private information that, if known, would subject them to a likelihood of retaliation in this country. *See, e.g.*, *Does 1-158*, 2025 WL 2709775, at *2; *Lozano*, 620 F.3d at 195. Plaintiffs' claims also include information about the medical and psychological history of several Plaintiffs and their family members. *See* Nesma Doe Decl. ¶ 6; Laila Doe Decl. ¶ 6; Waleed Doe Decl. ¶¶ 4, 11; Mustafa Doe Decl. ¶ 11. The threat of disclosure of medical details supports anonymity. *See, e.g.*, *K.U. v. Freden*, No. 25-CV-361-LJV, 2025 WL 1473974, at *3 (W.D.N.Y. May 21, 2025).

The fact that Plaintiffs' status as litigants challenging this policy has thus far been kept confidential also counsels in favor of anonymity. *See, e.g.*, *id.* at *3; *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006). So, too, does the lack of any alternate mechanism that would disclose additional information to the public while still providing safety to the Plaintiffs.[2]

**II.    Defendants Are Government Officials Who Will Not Be Prejudiced, and the Public Interest Will Be Served by Allowing Plaintiffs to Proceed Using Pseudonyms.**

Allowing Plaintiffs to proceed pseudonymously is especially appropriate where, as here, Defendants are government officials sued in their official capacities. *See, e.g.*, *E.W. v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). This is in part because "[s]uits against the government 'involve no injury to the [g]overnment's reputation.'" *Doe v. Skyline Autos., Inc.*, 375 F. Supp. 3d

---

[2] Because no Plaintiff is a minor, the "particularly vulnerable" factor does not apply directly in this case. *Doe 11 v. Jarecki*, No. 24 Civ. 4208 (JPC), 2024 WL 2946058, at *2 (S.D.N.Y. June 11, 2024). But two Plaintiffs are parents to minor children, including one child who has TPS and thus faces the same harms if her or her mother's identity made public.

Case 1:25-cv-08686-KPF   Document 15   Filed 10/21/25   Page 7 of 9

401, 406 (S.D.N.Y. 2019) (quoting *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, No. 12 Civ. 6152(VM)(KNF), 2012 WL 5899331, at *7 (S.D.N.Y. Nov. 26, 2012)).

Moreover, Defendants will suffer no prejudice should Plaintiffs be allowed to proceed under pseudonym, because Plaintiffs' identities are not relevant to any of the issues in this case. All that matters for Plaintiffs' standing is that they are TPS holders adversely affected by the termination decision. Plaintiffs' challenges are legal ones against a universal termination decision that does not implicate the personal circumstances of any individual noncitizen harmed by the government's action. And because Plaintiffs' claims arise under the Administrative Procedure Act, 5 U.S.C. § 706(2), the court will decide the merits of those claims on the basis of an administrative record containing only the information before Defendants at the time they made the termination decision, *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997)—information that would not include the identities of individual TPS holders. Allowing Plaintiffs to proceed using pseudonyms will thus not prevent Defendants from presenting a full defense that includes every argument available to them.

Finally, the public interest weighs heavily in favor of allowing Plaintiffs to proceed under pseudonyms. The public has a strong interest in actions like this one that seek to hold the executive branch accountable to the rule of law. *See, e.g.*, *Parra Rodriguez v. Noem*, No. 3:25-cv-616 (SRU), 2025 WL 1284722, at *11 (D. Conn. May 1, 2025); *Ozturk v. Trump*, No. 2:25-cv-374, 2025 WL 1190759, at *2 (D. Vt. Apr. 24, 2025). And given the potential for retaliation, forcing Plaintiffs to publicly expose their identities in order to pursue litigation "creates an unnecessary risk of chilling the willingness of [noncitizens] from litigating important issues like the ones raised in this case." *See Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 WL 6541446, at *7 (S.D. Cal. Dec. 20, 2017); *accord Lozano*, 620 F.3d at 195. Thus, permitting Plaintiffs to use pseudonyms "will serve the public's interest in this lawsuit by enabling it to go forward." *Does I*

7

*thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000). Finally, because this case raises only legal questions—whether Defendants' conduct conforms to statutory and constitutional requirements—the countervailing "public interest in knowing the litigants' identities" is "atypically weak." *Sealed Plaintiff*, 537 F.3d at 190; *accord, e.g.*, *Doe v. Cuomo*, No. 10–CV–1534 (TJM/CFH), 2013 WL 1213174, at *7 (N.D.N.Y. Feb. 25, 2013).

## CONCLUSION

For the foregoing reasons, Plaintiffs should be permitted to proceed in this suit using pseudonyms.

Dated: October 21, 2025                     Respectfully submitted,

INTERNATIONAL REFUGEE ASSISTANCE
   PROJECT
 /s/ *Guadalupe Aguirre*
Guadalupe Aguirre
Ghita Schwarz
Megan Hauptman*
One Battery Park Plaza, Fl 33
New York, NY 10004
(929) 246-0154
laguirre@refugeerights.org
gschwarz@refugeerights.org
mhauptman@refugeerights.org

MUSLIM ADOVCATES
*/s/ Golnaz Fakhimi*
Golnaz Fakhimi
Sadaf Hasan*
1032 15th Street N.W. # 362
Washington, D.C. 20005
(202) 655-2969
golnaz@muslimadvocates.org
sadaf@muslimadvocates.org

VAN DER HOUT LLP
/s/ *Marc Van Der Hout*

8

                              Marc Van Der Hout*
                              Johnny Sinodis*
                              Oona Cahill*
                              360 Post Street, Suite 800
                              San Francisco, CA 94108
                              Telephone: (415) 981-3000
                              Facsimile: (415) 981-3003
                              ndca@vblaw.com

*Counsel for Plaintiffs*

*\*Application for admission Pro Hac Vice forthcoming*

9