UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAHLIA DOE, *et al.*,

Plaintiffs,

v.

MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity, *et al.*,

Defendants.

Case No. 25 Civ. 8686 (KPF)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION**

JAMES M. MCDONALD
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2734/2713
*Attorney for Defendants*

MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
*Of Counsel*

**Table of Contents**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

I. STATUTORY BACKGROUND ........ 3

A. TPS Statute ........ 3

B. The Homeland Security Act ........ 4

II. FACTUAL BACKGROUND ........ 5

III. PROCEDURAL HISTORY ........ 6

LEGAL STANDARD ........ 7

ARGUMENT ........ 9

I. PLAINTIFFS' STATUTORY APA CLAIM IS FORECLOSED BY *MULLIN V. DOE.* ........ 9

II. THE *ULTRA VIRES* CLAIM IS FORECLOSED BY *MULLIN V. DOE* AND FAILS ON THE MERITS. ........ 11

III. THE EQUAL PROTECTION CLAIM IS FORECLOSED BY *MULLIN V. DOE* AND FAILS ON THE MERITS ........ 15

IV. PLAINTIFFS' DUE PROCESS CLAIM IS FORECLOSED BY *MULLIN V. DOE* AND FAILS ON THE MERITS ........ 19

CONCLUSION ........ 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afr. Cmtys. Together v. Mullin*,
No. 25-CV-13939-PBS, 2026 WL 2274504 (D. Mass. Aug. 7, 2026) .................................... 14

*Afr. Cmtys. Together v. Mullin*,
No. 26 Civ. 10278 (BEM), 2026 WL 2408737 (D. Mass. Aug. 18, 2026) ........................ 14, 17

*Afr. Cmtys. Together v. Mullin*,
No. 26-CV-11201-ADB, 2026 WL 2364398 (D. Mass. Aug. 14, 2026) ................................. 18

*Air Line Pilots Ass'n, Int'l v. Quesada*,
276 F.2d 892 (2d Cir. 1960) .................................................................................................. 25

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985) .............................................................................................................. 20

*NIH v. Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025) ..................................................................................................... 12, 17

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. United States*,
489 F. Supp. 3d 106 (E.D.N.Y. 2020) ...................................................................................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 8, 17

*Bah v. Cangemi*,
548 F.3d 680 (8th Cir. 2008) ................................................................................................. 22

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) ..................................................................................................... 21, 22, 24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 8

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
239 U.S. 441 (1915) .............................................................................................................. 25

*Bucklew v. Precythe*,
587 U.S. 119 (2019) ......................................................................................................... 12, 17

*Buday v. N.Y. Yankees P'ship*,
486 F. App'x 894 (2d Cir. 2012) ........ 8

*CASA de Maryland, Inc. v. Trump*,
355 F. Supp. 3d 307 (D. Md. 2018) ........ 22

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........ 8

*Cooke v. United States*,
918 F.3d 77 (2d Cir. 2019) ........ 7

*Daly v. Citigroup Inc.*,
939 F.3d 415 (2d Cir. 2019) ........ 7

*Dawson v. Milwaukee Hous. Auth.*,
930 F.2d 1283 (7th Cir. 1991) ........ 25

*Doe v. Mullin*,
No. 25-CV-15483, 2026 WL 2279577 (N.D. Ill. Aug. 7, 2026) ........ 17

*Doe v. Noem*,
No. 26-CV-2103 (DEH), 2026 WL 2085662 (S.D.N.Y. July 20, 2026) ........ 18

*Est. of Landers v. Leavitt*,
545 F.3d 98 (2d Cir. 2008) ........ 3

*Giambalvo v. Suffolk Cnty.*,
155 F.4th 163 (2d Cir. 2025) ........ 12, 17

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ........ 13

*Hernandez v. Sessions*,
884 F.3d 107 (2d Cir. 2018) ........ 22, 24

*Jimenez-Nieves v. United States*,
682 F.2d 1 (1st Cir. 1982) ........ 20

*Just Bagels Mfg., Inc. v. Mayorkas*,
900 F. Supp. 2d 363 (S.D.N.Y. 2012) ........ 3

*Kentucky Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989) ........ 23

*Kopunek v. Dir. of Internal Revenue*,
528 F. Supp. 134 (S.D.N.Y. 1981)........................................................................ 26

*Libertarian Party of Erie Cty. v. Cuomo*,
970 F.3d 106 (2d Cir. 2020)........................................................................ 8

*Make the Rd. N.Y. v. Mullin*,
179 F.4th 16 (D.C. Cir. 2026)........................................................................ 3, 5, 6

*Mathews v. Eldridge*,
424 U.S. 319 (1976)........................................................................ 24

*McGowan v. United States*,
825 F.3d 118 (2d Cir. 2016)........................................................................ 7

*Mejia Rodriguez v. DHS*,
562 F.3d 1137 (11th Cir. 2009) ........................................................................ 14

*Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*,
647 F. Supp. 3d 286 (S.D.N.Y. 2022)........................................................................ 7

*Miot v. Trump*,
818 F. Supp. 3d 126 (D.D.C. 2026) ........................................................................ 7

*Mullin v. Doe*,
146 S. Ct. 2121 (2026)........................................................................ passim

*Nat'l Audubon Soc. v. Hoffman*,
132 F.3d 7 (2d Cir. 1997) ........................................................................ 9

*Portillo-Rendon v. Holder*,
662 F.3d 815 (7th Cir. 2011) ........................................................................ 26

*Ramos v. Louisiana*,
590 U.S. 83 (2020)........................................................................ 12, 17

*Regents of the Univ. of California*,
591 U.S. 1 (2020)........................................................................ 15, 17, 20

*Residents for Sane Trash Sols., Inc. v. U.S. Army Corps of Eng'rs*,
31 F. Supp. 3d 571 (S.D.N.Y. 2014)........................................................................ 8

*Saget v. Trump*,
375 F. Supp. 3d 280 (E.D.N.Y. 2019) ........................................................................ 14

*Seminole Tribe of Fla. v. Fla.*,
517 U.S. 44 (1996) ... 12

*Tobar v. Garland*,
65 F.4th 195 (5th Cir. 2023) ... 22

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005) ... 23

*Trump v. Hawaii*,
585 U.S. 667 (2018) ... 16

*United States ex rel. Turner v. Williams*,
194 U.S. 279 (1904) ... 24

*United States v. Caceres*,
440 U.S. 741 (1979) ... 26

*United States v. Fla. E. Coast Ry. Co.*,
410 U.S. 224 (1973) ... 24

*UPMC Mercy v. Sebelius*,
793 F. Supp. 2d 62 (D.D.C. 2011) ... 9

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ... 16

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ... 21

*Whiteside v. Hover-Davis, Inc.*,
995 F.3d 315 (2d Cir. 2021) ... 8

**Statutes**

5 U.S.C. § 705 ... 6

5 U.S.C. § 706(2) ... 3

5 U.S.C. § 703 ... 3

6 U.S.C. § 557 ... 3, 5, 12, 13

8 U.S.C. § 1103(a) ... 3, 5, 13

8 U.S.C. § 1103(g)(1) ... 5, 13

8 U.S.C. § 1252(f)(1) .......... 27

8 U.S.C. § 1254a .......... passim

Pub. L. No. 101-649 .......... 3

Pub. L. No. 107-296 .......... 4

**Rules**

Fed. R. Civ. P. 56(a) .......... 8

**Regulations**

8 C.F.R. § 244.2 .......... 22

**Other Authorities**

77 Fed. Reg. 19,026 .......... 5

90 Fed. Reg. 45,398 .......... 5

Defendants (the "government") respectfully submit this memorandum of law in support of their cross-motion to dismiss or, alternatively, for summary judgment and in opposition to Plaintiffs' partial motion for summary judgment. ECF No. 93 ("Pl. Br.").

**PRELIMINARY STATEMENT**

Plaintiffs in this putative class action challenge the Secretary of Homeland Security's termination of Syria's Temporary Protected Status ("TPS") designation. The amended complaint asserts claims under the Administrative Procedure Act ("APA") and the equal protection guarantee of the Fifth Amendment, and also includes *ultra vires* and due process claims. All of these claims are foreclosed by the Supreme Court's decision in *Mullin v. Doe*, 146 S. Ct. 2121 (2026), and each is independently deficient.

Plaintiffs' statutory APA claim is barred. It asks the Court to review the Secretary's termination of Syria's designation, but 8 U.S.C. § 1254a(b)(5)(A) forecloses courts' review of any such determination. Nor can Plaintiffs avoid the judicial-review bar by characterizing their claim as procedural rather than substantive; the Supreme Court rejected that distinction and cautioned that the bar cannot be evaded by creative pleading. The Supreme Court said so in this case. It granted certiorari before judgment and reversed this Court's order postponing the effective date of the termination, an order that rested on the same statutory APA theories Plaintiffs have now repleaded.

The *ultra vires* claim is based on the premise that the termination is invalid because authority over TPS rests with the Attorney General, not the Secretary. In *Mullin v. Doe*, however, the Supreme Court concluded that the Secretary of Homeland Security has authority over TPS and made clear that the TPS statute's bar on judicial review applies to the Secretary's determinations.

The claim also fails on the merits because, as courts have consistently held, the Homeland Security Act of 2002 transferred authority over TPS to the Secretary. And the claim is self-defeating: if the Secretary lacked authority to terminate Syria's designation, the Secretary equally lacked authority to designate Syria in the first place, which would leave Plaintiffs with no TPS status to preserve.

Plaintiffs' equal protection claim fails as a matter of law under *Mullin v. Doe*. The Supreme Court there credited a strong, race-neutral explanation for TPS terminations—the administration's aversion to past administrations' TPS policies, reflected in the termination of 13 designations the Secretary had reviewed. The Supreme Court further held that allegedly discriminatory statements of the same character as those cited by Plaintiffs here were insufficient to show that the termination of the TPS designation at issue was based on race, and that reasoning applies equally to claims of discrimination based on ethnicity or national origin.

The due process claim fails as well. That claim is the same challenge to the Secretary's consultation and decision-making process that *Mullin v. Doe* held unreviewable, now recast in constitutional terms. It also fails on the merits. Plaintiffs have no protected interest in the continuation of a discretionary, country-wide designation. The individualized procedures they invoke do not apply to a categorical determination about conditions in a foreign country and the national interest. And Plaintiffs received the process the statute prescribes and the Constitution requires.

For these reasons, the amended complaint should be dismissed in its entirety, and Plaintiffs' motion for partial summary judgment should be denied.

## BACKGROUND[1]

### I. Statutory Background

#### A. TPS Statute

The Immigration Act of 1990 established TPS to allow for temporary, discretionary shelter in the United States for qualifying nationals from designated foreign countries. Pub. L. No. 101-649, 104 Stat. 4978. The statute permits the Secretary of Homeland Security,[2] "after consultation with appropriate agencies," to designate countries for TPS if the Secretary determines that certain statutorily specified conditions are met. 8 U.S.C. § 1254a(b)(1). As relevant here, one condition is that "there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that

---

[1] Plaintiffs filed a Rule 56.1 statement with their motion. ECF No. 91-1. But Local Civil Rule 56.1 "does not apply to claims brought under the [APA]." Local Civ. R. 56.1(a). Both claims on which Plaintiffs seek summary judgment are APA claims. The *ultra vires* claim is expressly pleaded under the APA. Am. Compl. ¶¶ 202–04. The due process claim seeks to "set aside agency action" as "contrary to constitutional right"—relief available only under the APA. 5 U.S.C. § 706(2); Am. Compl. ¶ 201; *see also* ECF No. 91 (seeking summary judgment under 5 U.S.C. §§ 703, 706); *Make the Rd. N.Y. v. Mullin*, 179 F.4th 16, 29 (D.C. Cir. 2026) ("Constitutional challenges to agency action are . . . resolved within the APA's judicial-review framework."). Plaintiffs acknowledge that APA standards govern here. Pl. Br. 5. Under those standards, "'the entire case on a review is a question of law'" and the inquiry is "'not to determine whether a dispute of fact remains.'" *Id*. Thus, Rule 56.1 statements have no role. *See, e.g., Est. of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008) (affirming refusal "to consider evidence outside the administrative record," including "statement of material facts"); *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. United States*, 489 F. Supp. 3d 106, 128 n.14 (E.D.N.Y. 2020) ("56.1 Statements . . . are not required on APA review"); *Just Bagels Mfg., Inc. v. Mayorkas*, 900 F. Supp. 2d 363, 372 n.7 (S.D.N.Y. 2012) ("[in] an appeal based on an administrative record [56.1] submissions are not necessary" (collecting cases)). Because Rule 56.1 does not apply, the government has not responded to Plaintiffs' 56.1 statement or submitted its own. If the Court determines that such submissions are required, the government will file them at the Court's direction.

[2] As discussed below, Congress has transferred TPS authority from the Attorney General to the Secretary of Homeland Security. *See* 6 U.S.C. § 557; 8 U.S.C. § 1103(a).

permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." *Id.* § 1254a(b)(1)(C). Another is that "there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety." *Id.* § 1254a(b)(1)(A).

TPS designations are discretionary and last "not less than 6 months and not more than 18 months." *Id.* § 1254a(b)(2)(B). At least 60 days before the end of the initial designation and any later extension, the Secretary, after consulting with appropriate agencies, must "review the conditions in the foreign state . . . for which a designation is in effect" and "determine whether the conditions for such designation . . . continue to be met." *Id.* § 1254a(b)(3)(A). If the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation." *Id.* § 1254a(b)(3)(B).

Congress enacted a broad prohibition on judicial review of the Secretary's exercise of TPS authority: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

**B. The Homeland Security Act**

The Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135 (codified at 6 U.S.C. § 101 *et seq.*) (the "Act"), established the Department of Homeland Security ("DHS") and, among other things, charged it with certain functions that had previously been administered by other governmental components. As relevant here, the "administration and enforcement" of all laws "relating to the immigration and naturalization of aliens" was transferred to the Secretary of

Homeland Security, subject to limited exceptions for certain "powers, functions, and duties conferred upon the President, Attorney General," and other executive officials. 8 U.S.C. § 1103(a)(1). Under the Act, the Attorney General retained only such "authorities and functions" as "were exercised by the Executive Office for Immigration Review, or by the Attorney General with respect to the Executive Office for Immigration Review." *Id.* § 1103(g)(1).

Congress did not rewrite every immigration law referring to the Attorney General. It did not need to do so, as the Act's reference-updating provision states: "With respect to any function transferred," a "reference in any other Federal law to any . . . officer or office the functions of which are so transferred shall be deemed to refer to the Secretary." 6 U.S.C. § 557.

**II. Factual Background**

In 2012, the Secretary of Homeland Security designated Syria for TPS due to "extraordinary and temporary conditions" resulting from "a brutal crackdown" by then-Syrian President Bashar al-Assad. 77 Fed. Reg. 19,026, 19,026–27 (Mar. 29, 2012). The designation was extended based on those conditions and on "ongoing armed conflict." 90 Fed. Reg. 45,398, 45,399 (Sept. 22, 2025) (listing extensions).

On September 22, 2025, the then-serving Secretary announced that Syria's TPS designation would be terminated effective November 21, 2025, after determining that Syria no longer met the criteria for its designation based on either "extraordinary and temporary conditions" or "ongoing armed conflict." *Id.* at 45,399–402. In sum, the Secretary found that the Assad regime fell in December 2024 and, since then, Interim President Ahmed al-Sharaa had taken steps to establish a governing infrastructure for the country and a legal framework for the post-Assad era. *Id.* at 45,400. While "sporadic and episodic violence" continued, the Secretary found that the situation no longer met the standard for a conflict that poses "a serious threat to the personal safety

of returning Syrian nationals." *Id.* Since the Assad regime fell, the nature of violence had changed: a "national-level war" shifted to "localized clashes" and then lessened to "sporadic, isolated episodes of violence." *Id.* And while most Syrians required humanitarian assistance, the U.N. estimated that, since 2024, over 1.2 million Syrians returned to the country and over 1.7 million internally displaced Syrians returned home. *Id.*

The Secretary found that the continued designation of Syria for TPS was contrary to the national interest, in part because the government lacked access to information to reliably vet Syrians applying to enter the United States. *Id.* at 45,401. The Secretary also found compelling foreign policy reasons for ending the TPS designation, including that extending it would "complicate the administration's broader diplomatic engagement with Syria's transitional government." *Id.* at 45,401–02.

**III. Procedural History**

Plaintiffs sued on October 20, 2025, claiming that the termination of Syria's TPS designation violated the APA and the equal protection guarantee of the Fifth Amendment. ECF No. 1. One day later, Plaintiffs moved under 5 U.S.C. § 705 to postpone the effective date of the termination. ECF No. 19. On November 19, 2025, the Court granted Plaintiffs' motion after finding that they were likely to succeed on the merits of some of their statutory APA theories—but not on their Fifth Amendment claim. ECF Nos. 54, 59. In granting Plaintiffs relief, the Court rejected the government's argument that § 1254a(b)(5)(A) barred judicial review of such APA claims. ECF No. 36, at 8–11; ECF No. 59, at 9–11.

The government appealed and moved for a stay of the postponement order. ECF Nos. 56, 67. After the Second Circuit denied its motion (ECF No. 67), the government petitioned the Supreme Court for relief. *Mullin v. Doe*, 146 S. Ct. at 2132. The Supreme Court granted certiorari

before judgment and consolidated this case with *Miot v. Trump*—a case in which another district court had postponed the termination of Haiti's TPS designation. *Id.* at 2132–33 (citing *Miot v. Trump*, 818 F. Supp. 3d 126, 186 (D.D.C. 2026)).

On June 25, 2026, the Supreme Court issued an opinion reversing the postponement orders in this case and in *Miot*. *Id.* at 2133, 2140. The six-justice majority held that "the TPS statute's judicial-review bar applies to all non-constitutional claims," while also finding that an equal protection claim asserted in *Miot*—analogous to the claims asserted by Plaintiffs here—was flawed and unlikely to succeed. *Id.* at 2137–40.

On July 27, 2026, Plaintiffs filed an amended complaint which reasserted their statutory APA and Fifth Amendment equal protection claims, while also adding an *ultra vires* claim and a due process claim. Am. Compl. ¶¶ 184–204.

On August 17, 2026, Plaintiffs moved for partial summary judgment with respect to the newly added *ultra vires* and due process claims only. *See generally* Pl. Br.

## LEGAL STANDARD

A case is properly dismissed under Rule 12(b)(1) "'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) (citation and quotation marks omitted). To withstand dismissal under Rule 12(b)(1), a plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016)). While Rule 12(b)(1) requires a court to accept all material factual allegations in the complaint as true, the court may not draw "argumentative inferences favorable to the party asserting jurisdiction." *Mid-New York Env't & Sustainability*

*Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*, 647 F. Supp. 3d 286, 290 (S.D.N.Y. 2022) (quoting *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012)). Furthermore, the Court may extend its purview to consider evidence outside the pleadings. *See Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020) (abrogated on other grounds).

To withstand dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The assumption of truth, however, does not apply to "allegations that amount to mere 'legal conclusions.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021) (citation omitted). While "detailed factual allegations" are not necessary, a pleading must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] "Where, as here, a party seeks judicial review of agency action, summary judgment is appropriate, since 'whether an agency action is supported by the administrative record and consistent with the APA standard of review' is decided 'as a matter of law.'" *Residents for Sane*

---

[3] Because the government's arguments do not rely on the administrative record or extrinsic evidence, the government has moved to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6). The government moves for summary judgment only in the alternative and does so only to ensure that the Court may freely consider any materials bearing on its motion. *But see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153–54 (2d Cir. 2002) ("'[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.'").

*Trash Sols., Inc. v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014) (quoting *UPMC Mercy v. Sebelius*, 793 F. Supp. 2d 62, 67 (D.D.C. 2011)). "Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997).

## ARGUMENT

### I. Plaintiffs' Statutory APA Claim Is Foreclosed by *Mullin v. Doe.*

Plaintiffs claim that Defendants "lack statutory authority to terminate Syria's TPS designation," that the decision "was not based on an objective review of country conditions, as required by 8 U.S.C. § 1254a(b)(3)," and that any process afforded "was so deficient as to amount to no process at all." Am. Compl. ¶ 187(a)–(c). This claim is non-constitutional and should be dismissed because it is foreclosed by *Mullin v. Doe*.

As explained above, the Supreme Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Mullin v. Doe*, 146 S. Ct. at 2137. Plaintiffs' APA claim falls within that holding. It asks the Court to review the Secretary's determination terminating Syria's designation, yet Congress has provided that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A).

Nor can Plaintiffs properly allege an APA claim by characterizing it as directed at the Secretary's process rather than her determination. The Supreme Court rejected the argument that the review bar "applies only to substantive claims, not those based on alleged procedural errors," and identified "her decision to consult the State Department in a particular manner" as subject to the bar. *Mullin v. Doe*, 146 S. Ct. at 2134. That holding forecloses the consultation theory that Plaintiffs' amended complaint alleges. *See, e.g.*, Am. Compl. ¶¶ 178(a), 199. The same is true for

Plaintiffs' allegations that the decision was preordained, that it rested on "a consideration of extra-statutory factors," that it reflected "a selective review of country conditions," and that any process afforded "was so deficient as to amount to no process at all." *Id.* ¶ 187(b)–(c). Each of those allegations reflects an objection to how the Secretary reached her determination, and the Supreme Court has held that such objections are subject to the judicial-review bar. *See Mullin v. Doe*, 146 S. Ct. at 2136–37. The Court also noted that the bar cannot be evaded "by creative pleading or clever lawyering." *Id.* at 2136.

Plaintiffs' remaining allegations fare no better, because they attack the substance of the Secretary's judgment. Plaintiffs allege that the termination "was not based on an objective review of country conditions, as required by 8 U.S.C. § 1254a(b)(3)," and that the Secretary relied on "extra-statutory factors." Am. Compl. ¶ 187(b). Section 1254a(b)(5)(A) does not permit a court to reweigh the considerations Congress committed to the Secretary.

Plaintiffs' allegations about the 60-day wind-down are barred for the same reason. Plaintiffs allege that Defendants failed "to provide more than the minimum 60-day notice before purporting to terminate Syria's TPS designation," Am. Compl. ¶ 178(d), and that this was a departure from prior practice, *id.* ¶ 39. But a challenge to the adequacy of the Secretary's acknowledgment and explanation of her determination is a challenge to that determination, and section 1254a(b)(5)(A) forecloses it.

Plaintiffs do not contend otherwise. They acknowledge that, "following *Mullin*, Plaintiffs may no longer raise their prior statutory claims to vindicate those violations," Pl. Br. 1, and they have not moved for summary judgment on that count. But a claim Congress has placed beyond judicial review should be dismissed.

The Supreme Court has already applied *Mullin v. Doe* to these claims in this case. It granted certiorari before judgment, consolidated this case with *Miot*, and reversed this Court's order postponing the effective date of the termination of Syria's TPS designation, which rested on the statutory APA theories Plaintiffs have now repleaded. *Mullin v. Doe*, 146 S. Ct. at 2132–33, 2140; ECF Nos. 54, 59. The APA claim should be dismissed.

## II. The *Ultra Vires* Claim Is Foreclosed by *Mullin v. Doe* and Fails on the Merits.

Plaintiffs claim that the termination of Syria's TPS designation is void because Congress vested the authority to terminate TPS designations exclusively in the Attorney General, and that authority was never transferred to the Secretary. *See* Am. Compl. ¶¶ 203–04; Pl. Br. 9–16. In *Mullin v. Doe*, the Supreme Court foreclosed this argument three times over. First, the Supreme Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Mullin v. Doe*, 146 S. Ct. at 2137. Because the *ultra vires* claim is non-constitutional, it is foreclosed by the Supreme Court's decision. Pl. Br. 8 (characterizing *ultra vires* claim as a "statutory-authority question"). Second, contrary to Plaintiffs' view that the Attorney General has authority over TPS, the Supreme Court concluded that "[r]esponsibility for TPS decisions rests with the Secretary of Homeland Security." *Mullin v. Doe*, 146 S. Ct. at 2129 (citing 6 U.S.C. §§ 552(d), 557). Third, the Supreme Court made clear that the TPS statute's bar on judicial review applies to determinations by the Secretary, stating that 8 U.S.C. § 1254a(b)(5)(A) "provides: 'There is no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection.'" *Id.* at 2133 (alterations in original). The Court then applied that bar to two termination decisions made by the Secretary. *Id.* at 2134. For these reasons, Plaintiffs' contention

that the statutory review bar applies only to determinations of the Attorney General (Pl. Br. 7) is foreclosed by *Mullin v. Doe*.

Plaintiffs contend that the Supreme Court's decision does not control because this issue "'merely lurk[ed] in the record.'" Pl. Br. 9. But the Court did not simply assume in passing that the Secretary possessed authority over TPS. Instead, the Court expressly stated that responsibility for TPS decisions rests with the Secretary, cited statutory provisions that supported this conclusion (including 6 U.S.C. § 557), and then construed § 1254a(b)(5)(A) by replacing "Attorney General" with "Secretary of Homeland Security" in the statutory text. *Mullin v. Doe*, 146 S. Ct. at 2129–30, 2133. This understanding was essential to the Supreme Court's application of the review bar to the Secretary's TPS terminations. This aspect of the decision is therefore binding. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").

Plaintiffs also suggest that *Mullin v. Doe* is not binding because the Supreme Court issued the decision at the preliminary-relief stage. Pl. Br. 9. But "regardless of a decision's procedural posture, its 'reasoning—its *ratio decidendi*'—carries precedential weight in 'future cases.'" *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663–64 (2025) (Gorsuch, J., concurring) (quoting *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020)); *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019) ("[J]ust as binding as [a] holding is the reasoning underlying it."); *cf. Giambalvo v. Suffolk Cnty.*, 155 F.4th 163, 177 n.4 (2d Cir. 2025) ("a well-considered conclusion of law by a panel of this Court in a published opinion, which addresses a pure issue of law . . . is binding precedent," even if issued "in the preliminary injunction posture").

Even putting aside the Supreme Court's decision, Plaintiffs' *ultra vires* argument fails on the merits. When Congress created DHS in 2002 and reorganized the Executive Branch's immigration functions, it transferred authority over TPS from the Attorney General to the Secretary. Specifically, the Act charged the Secretary with the "administration and enforcement" of all laws "relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). Rather than rewrite each of the TPS statute's references to the "Attorney General," Congress relied on the Act's reference-updating provision. Specifically, 6 U.S.C. § 557 provides that, with respect to "any function transferred by or under this chapter," a reference "to any . . . officer or office the functions of which are so transferred shall be deemed to refer to the Secretary." 6 U.S.C. § 557. Because TPS administration was a function transferred to the Secretary, § 557 updates every reference to the Attorney General in 8 U.S.C. § 1254a to mean the Secretary.

Plaintiffs seize on § 1103(a)'s carve-out for functions "'conferred upon the . . . Attorney General.'" Pl. Br. 12 (emphasis omitted). The same section reserves those functions previously exercised by the Executive Office for Immigration Review ("EOIR"), a component of the Department of Justice. Specifically, the Attorney General retains "such authorities and functions . . . as were exercised by [EOIR], or by the Attorney General with respect to [EOIR]." 8 U.S.C. § 1103(g)(1). EOIR never administered the TPS statute. If, as Plaintiffs contend, § 1103(a) reserved to the Attorney General every function the Attorney General had previously exercised, then § 1103(g) would be superfluous. There would be no need to specify that the Attorney General retains the functions exercised with respect to EOIR. Courts "avoid" interpretations of statutory text that render "some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995). Plaintiffs' reading would also make § 1103(a) self-defeating: Section 1103(a) would

transfer the Attorney General's immigration functions in one breath while reserving them to the Attorney General in the next.

Even before *Mullin v. Doe*, courts universally adopted the government's statutory construction. *See, e.g.*, *Mejia Rodriguez v. DHS*, 562 F.3d 1137, 1140 n.3 (11th Cir. 2009) (though "the statute governing TPS refers to the Attorney General as the decisionmaker," this "authority . . . has been transferred to the Secretary" (citing 8 U.S.C. § 1103(a))); *Saget v. Trump*, 375 F. Supp. 3d 280, 297 (E.D.N.Y. 2019) ("Congress . . . transferred authority to make TPS designations from the Attorney General to the Secretary" (citing 8 U.S.C. § 1103; 6 U.S.C. § 557)). And since *Mullin v. Doe* was decided, courts have rejected the same *ultra vires* argument that Plaintiffs advance here. *See Afr. Cmtys. Together v. Mullin*, No. 26 Civ. 10278 (BEM), 2026 WL 2408737, at *5 (D. Mass. Aug. 18, 2026) (dismissing *ultra vires* claim and noting that the "only courts to have squarely addressed this issue adopted Defendants' interpretation" (citing three recent decisions in other TPS cases)). Plaintiffs identify no decision holding otherwise.

Finally, Plaintiffs' theory is self-defeating. Both the designation and termination provisions of the TPS statute refer to the "Attorney General." 8 U.S.C. § 1254a(b)(1), (b)(3)(B). If the Secretary lacked authority to terminate Syria's TPS designation, past Secretaries also lacked the authority to designate Syria for TPS in 2012 and to extend that designation in later years. Plaintiffs' success on their *ultra vires* claim would therefore eliminate the very benefit they seek to preserve. *See Afr. Cmtys. Together v. Mullin*, No. 25-CV-13939-PBS, 2026 WL 2274504, at *4 (D. Mass. Aug. 7, 2026) (plaintiffs' "*ultra vires* claim would likely still be futile . . . because if . . . the

Attorney General enjoys the exclusive right to *terminate* a TPS designation, he likewise has the sole authority to *designate* a country for TPS").[4]

For these reasons, the *ultra vires* claim should be dismissed, and Plaintiffs' motion for summary judgment on that claim should be denied.

## III. The Equal Protection Claim Is Foreclosed by *Mullin v. Doe* and Fails on the Merits.

Plaintiffs contend that the Secretary's determination to terminate Syria's TPS designation violated the Fifth Amendment's equal protection guarantee because it discriminated against them based on their race, ethnicity, and national origin. *See* Am. Compl. ¶¶ 191–95. These discrimination claims rest principally on statements by administration officials, including the President and the Secretary, about various immigrant groups and on immigration restrictions imposed by this administration. *Id.* ¶¶ 105–138. As an initial matter, the TPS statute's bar on judicial review applies to these claims. *See Mullin v. Doe*, 146 S. Ct. at 2140 (Thomas, J., concurring) (plaintiffs' "equal protection claim" falls "within the plain text of § 1254a(b)(5)(A)'s judicial-review bar"). But even if the claims were reviewable, they would fail as a matter of law as explained below.

---

[4] Plaintiffs offer three responses to this fundamental problem in a footnote, Pl. Br. 16 n.6, but none overcomes the problem. First, Plaintiffs argue that this suit challenges only the termination as a single final agency action. But that framing ignores the issue: if the Secretary has no authority over TPS, then the designation Plaintiffs seek to preserve is just as *ultra vires* as the termination—so a ruling in their favor would compel the termination of the designation. Second, Plaintiffs misread *DHS v. Regents of the Univ. of California*, 591 U.S. 1 (2020), which they cite for the proposition that the government must consider "alternatives" to termination. That case involved a program with two components: one allegedly unlawful, the other concededly lawful. The Supreme Court faulted DHS for rescinding both components without considering whether to preserve the lawful one. 591 U.S. at 28–29. Plaintiffs' theory here offers no lawful component to preserve: if the Secretary lacks TPS authority altogether, the Secretary cannot retain Syria's designation as an "alternative" to terminating it. Third, any procedural due process claim would fail for the reasons set forth below. *See infra* Section IV.

In *Mullin v. Doe*, the Supreme Court assumed without deciding that the heightened *Arlington Heights* standard applied to the plaintiffs' equal protection claims.[5] *See Mullin v. Doe*, 146 S. Ct. at 2138. Under that standard, courts determine whether "'discriminatory purpose [was] a motivating factor in the decision,'" *id.* (quoting *Arlington Heights*, 429 U.S. at 265–66) and, if so, whether "the same decision would have resulted even had the impermissible purpose not been considered." *Arlington Heights*, 429 U.S. at 271 n.21.

In *Mullin v. Doe*, the Supreme Court concluded that the race-based equal protection claim in *Miot* was flawed because the respondents (including the Plaintiffs here) had themselves identified "a strong, race-neutral explanation" for the TPS termination—namely, the current administration's "general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Mullin v. Doe*, 146 S. Ct. at 2139. Plaintiffs had emphasized that the Secretary had "terminated the TPS designations for every country that came up for review, 13 in all"—reflecting, in Plaintiffs' view, "a 'preordained decision' to end TPS for all countries." *Id.* The Supreme Court observed that the terminations concerned a "racially diverse group of countries"—including those in "East Asia (Nepal and Burma), Central Asia (Afghanistan), the Middle East (Syria and Yemen), Africa (Somalia, Ethiopia, South Sudan, and Cameroon), Central

---

[5] Plaintiffs' equal protection claims are subject to rational basis review for the reasons explained in the government's opposition to Plaintiffs' motion to postpone. ECF No. 36, at 19–22. After all, TPS determinations turn on country-specific judgments that "implicate 'relations with foreign powers'" and "involve 'classifications . . . defined in the light of changing political and economic circumstances,'" and thus warrant deferential review. *See Trump v. Hawaii*, 585 U.S. 667, 702 (2018). Nevertheless, because this Court has already concluded that *Arlington Heights* supplies the standard (ECF No. 59, at 27–28), the government follows *Mullin v. Doe*'s framing and assumes only "for the sake of argument that the *Arlington Heights* standard applies." *Mullin v. Doe*, 146 S. Ct. at 2138 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)).

America (Nicaragua and Honduras), South America (Venezuela), and the Caribbean (Haiti)." *Id.* Given the presence of a "strong, race-neutral explanation," the Supreme Court concluded that the plaintiffs' evidence was "insufficient to show that the termination of Haiti's TPS designation was based on the race of the Haitian people." *Id.*

This reasoning renders Plaintiffs' equal protection claims implausible under *Iqbal*. When an "obvious alternative explanation" accounts for the challenged action, "discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682. That principle applies with full force here. That *Mullin v. Doe* was decided at the preliminary-relief stage does not lessen the force of the decision's reasoning or make it any less binding at the motion-to-dismiss stage because, as noted above (*supra* Section II), "regardless of a decision's procedural posture, its 'reasoning—its *ratio decidendi*'—carries precedential weight." *NIH*, 145 S. Ct. at 2663–64 (Gorsuch, J., concurring); *Ramos*, 590 U.S. at 104; *Bucklew*, 587 U.S. at 136; *Giambalvo*, 155 F.4th at 177 n.4; *see also DHS v. Regents of the Univ. of California*, 591 U.S. 1, 34–35 (2020) (concluding at pleadings stage that allegations of "disparate impact of the [government action] on Latinos," "unusual history behind" the action, and "statements about Latinos that [allegedly] evince discriminatory intent" did not, "either singly or in concert, establish[] a plausible equal protection claim").[6]

[6] Two district courts outside this Circuit recently denied the government's motions to dismiss equal protection claims in other TPS cases because *Mullin v. Doe* was decided under a prospective "likelihood of success standard." *Doe v. Mullin*, No. 25-CV-15483, 2026 WL 2279577, at *11 (N.D. Ill. Aug. 7, 2026) (denying motion to dismiss equal protection claim "[b]ut because there [was] substantial ground for difference of opinion," certifying "ruling for interlocutory appeal under 28 U.S.C. § 1292(b)"); *Afr. Cmtys. Together*, 2026 WL 2408737, at *7. But the posture in which *Mullin v. Doe* arose does not diminish the binding force of its reasoning, and that reasoning prevents Plaintiffs from stating a plausible claim under *Iqbal*. The Supreme Court did not hedge its conclusion to the interim posture. It did not merely say the cited statements by the President and the Secretary were unlikely to establish discrimination; it held that they were "*insufficient* to

In support of their equal protection claims, Plaintiffs cite statements by the Secretary, President, and other administration officials as evidence of alleged bias against Syrians and immigrants generally. As an initial matter, this Court previously observed that Plaintiffs' allegations of "Syrian-specific animus" were scant. ECF No. 59, at 28–29 (rejecting plaintiffs' attempt to base claim on "'non-White, non-European'" protected class because doing so would "sweep in too much"); *cf. Doe v. Noem*, No. 26-CV-2103 (DEH), 2026 WL 2085662, at *2 (S.D.N.Y. July 20, 2026) (observing that allegedly discriminatory statements in Yemen TPS case were "fewer in number and in some sense less specific (in that they tended to refer to a broader group of people rather than to Yemenis specifically) than the statements about Haitians in *Mullin*"). In any event, the Supreme Court considered the same types of statements, acknowledging that they "associate[d] [certain] immigrants with crime and other social ills," "denigrate[d] the countries for which TPS designations have been granted . . . portraying them as hellish places in which to live," "malign[ed] [groups of immigrants] who have come to the United States," "expressed antipathy toward travelers from countries covered by a renewed travel ban," contained "derogatory comments about immigration and its effects," and "criticized past implementation of TPS." *Mullin v. Doe*, 146 S. Ct. at 2138. But the majority concluded that none of these statements was "overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications." *Id.* The Supreme Court recognized the "heated language" used, but concluded that, "whatever one

---

show that the termination of Haiti's TPS designation was based on" race. *Mullin v. Doe*, 146 S. Ct. at 2139 (emphasis added). Accordingly, another district court found that, after *Mullin v. Doe*, it could "not discern a path to concluding that Plaintiffs will succeed on the merits of [their equal protection] claim," even though the court itself thought plaintiffs had "la[id] out a strong case." *Afr. Cmtys. Together v. Mullin*, No. 26-CV-11201-ADB, 2026 WL 2364398, at *9 (D. Mass. Aug. 14, 2026) (denying motion to postpone).

may think of the cited statements, they are insufficient to show that the termination of [a] TPS designation was based on" illegal discrimination—especially given the "strong, race-neutral explanation" discussed above, namely, "the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Id.* at 2139.

For these reasons, the Court should dismiss the equal protection claim under Rule 12(b)(6).

## IV. Plaintiffs' Due Process Claim Is Foreclosed by *Mullin v. Doe* and Fails on the Merits.

Plaintiffs contend that the termination deprived them of liberty and property interests in their TPS status and related benefits, including employment authorization and removal protection, without constitutionally adequate process. *See* Am. Compl. ¶ 198. The claim fails for four reasons. First, section 1254a(b)(5)(A) bars review of the claim. Second, Plaintiffs have no protected liberty or property interest in the continuation of a discretionary, country-wide designation. Third, the individualized procedural protections they invoke have no application to the Secretary's across-the-board determination to terminate a country's designation. Finally, Plaintiffs' allegations make clear that they received any process the Constitution requires.

### A. Section 1254a(b)(5)(A) Bars Plaintiffs' Due Process Claim.

This Court need not decide whether the review bar applies to every constitutional claim, *Mullin v. Doe*, 146 S. Ct. at 2137, because it applies at least to a due process claim like this one, which simply repackages the challenges that *Mullin v. Doe* held were unreviewable. The respondents there, who include Plaintiffs, challenged a TPS termination on the ground that the Secretary failed to consult appropriate agencies and reached a preordained result. The Court rejected the argument that the review bar "applies only to substantive claims, not those based on alleged procedural errors," and identified the Secretary's "decision to consult the State Department in a particular manner" as subject to the bar. *Id.* at 2134. Having held that "the TPS statute's

judicial-review bar applies to all non-constitutional claims," the Court noted that the bar cannot be evaded "by creative pleading or clever lawyering." *Id.* at 2136–37.

That is what Plaintiffs attempt here. The deprivation that Plaintiffs allege is the Secretary's asserted failure to follow "the statutorily mandated requirements for termination," and the procedural failing they identify is that the decision "occurred prior to the requisite consultation with other appropriate agencies." Am. Compl. ¶¶ 198–99. Plaintiffs say the process owed to them "can be found in the TPS statute's procedural mandates," Pl. Br. 16; "the TPS statute provides the minimal process due to Plaintiffs," *id.* at 21; "due process required compliance with the TPS statute's procedural requirements," *id.* at 21–22; and "by failing to follow those mandates in its decision to terminate, Defendants violated Plaintiffs' due process rights," *id.* at 22. Those are the same alleged defects that were before the Supreme Court in this very case, now recast in constitutional terms.[7]

A court must "look beyond the literal meaning of the language used to ascertain the real cause of the complaint." *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) (Breyer, J.). Any other approach would allow parties to "evade" the review bar "by relabeling their" statutory claims as constitutional ones. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Were it otherwise, section 1254a(b)(5)(A) would impose little constraint and every challenge that

---

[7] Plaintiffs invoke the rule that "Congress must speak clearly if constitutional review is precluded." Pl. Br. 6. But that rule does not apply here, because Plaintiffs' due process claim simply repackages, through "creative pleading," the challenges that *Mullin v. Doe* held were unreviewable. 146 S. Ct. at 2136. Even if it did apply, Congress clearly foreclosed "judicial review" of challenges to TPS terminations writ large, in text that speaks with the requisite clarity to cover such challenges of whatever kind. *See supra* at 15.

*Mullin v. Doe* placed beyond review could be reasserted, unchanged in substance, as a claim for the denial of due process.[8]

Were there any doubt that these are repackaged statutory APA claims, the amended complaint alleges the same asserted process failure twice, once as a statutory APA violation and once as a constitutional one. Count One alleges that any process afforded "was so deficient as to amount to no process at all, defeating the purpose of the TPS statute and in violation of due process guarantees." Am. Compl. ¶ 187(c). The due process count rests on the same asserted failure: that the termination "without following the statutorily mandated requirements for termination deprives Plaintiffs of their liberty and property interests without due process of law." *Id.* ¶ 198.

**B. Plaintiffs Have No Protected Liberty or Property Interest.**

Even if the due process claim were reviewable, Plaintiffs still fail to state a claim. The Due Process Clause constrains governmental action only where it deprives a person of a protected liberty or property interest, and a protected property interest requires "a legitimate claim of entitlement," not merely "a unilateral expectation." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). TPS supplies no such entitlement. A TPS designation is temporary by name and design; an initial designation lasts "not less than 6 months and not more than 18 months," 8 U.S.C. § 1254a(b)(2), and its continuation beyond that period is never guaranteed. Whether a designation is extended or terminated turns on the Secretary's periodic review of country conditions and her discretionary determination whether the statutory criteria "continue to be met." *Id.*

[8] To the extent Plaintiffs intend to assert a substantive due process right to the continuation of a TPS designation, no such right is remotely rooted in the Nation's history and tradition. *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (substantive due process protects only rights "deeply rooted in this Nation's history and tradition") (citation omitted).

§ 1254a(b)(3)(A); *see also id.* § 1254a(b)(3)(B) (the Secretary "shall terminate" a designation upon determining that the country "no longer continues to meet the conditions for designation"). Each stage of the process includes discretionary judgment. The Secretary "may grant" TPS to an eligible national of a designated country, *id.* § 1254a(a)(1)(A), and an applicant "may in the discretion of the director be granted" that status only upon establishing eligibility, 8 C.F.R. § 244.2.

A benefit that the Secretary may withhold at the outset, and may end based on a discretionary judgment, is not an entitlement the Due Process Clause protects. As the Second Circuit has held, "aliens have no constitutionally-protected 'liberty or property interest' in . . . a discretionary grant of relief for which they are otherwise statutorily ineligible." *Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018). Justice Thomas made the same point about TPS in *Mullin v. Doe*, explaining that "[t]he termination of Haiti's TPS designation does not deprive respondents of 'life, liberty, or property'" because the "discretionary and limited status that a TPS designation provides, like any immigration status for aliens, is a government-created privilege, not a core private right." 146 S. Ct. at 2143 (Thomas, J., concurring). Courts of appeals have likewise treated TPS as a "discretionary form of relief." *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023); *Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008). The "explicitly temporary nature of the [TPS] program" forecloses any claim of protected reliance. *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018). At most, Plaintiffs held a "unilateral expectation" that a discretionary designation would continue—not the "legitimate claim of entitlement" that a protected property interest requires. *Roth*, 408 U.S. at 577.

A statute confers a protected entitlement only where it imposes "substantive limitations on official discretion" and "mandat[es] the outcome to be reached upon a finding that the relevant

criteria have been met." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (quotation marks omitted); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). The TPS statute does neither. The decision whether a designation is made or continues rests on the Secretary's discretionary judgment about country conditions and the national interest. The Secretary "*may* designate" a country in the first instance, and she terminates a designation based on her determination whether the statutory criteria "continue to be met." 8 U.S.C. § 1254a(b)(1), (b)(3)(A) (emphasis added). And even when a country is designated, the decision to grant TPS to a particular eligible individual remains discretionary. *See id.* § 1254a(a)(1)(A).

Plaintiffs contend that the statute "provides *no discretion* to terminate a country's TPS status unless" the Secretary "can affirmatively determine that designation conditions no longer exist." Pl. Br. 19 (emphasis added). But the TPS statute directs the Secretary to "review the conditions in the foreign state" and to "determine whether the conditions for such designation . . . continue to be met," 8 U.S.C. § 1254a(b)(3)(A), determinations that call for judgment. A designation continues only if the Secretary determines that "there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety," *id*. § 1254a(b)(1)(A), or that "there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States," *id.* § 1254a(b)(1)(C). The statute thus calls

for the Secretary's appraisal of conditions in a foreign state and of the national interest of the United States, and appraisals of that nature require the exercise of judgment and discretion.

Plaintiffs separately assert a liberty interest in the removal protection and work authorization that accompany TPS. *See* Am. Compl. ¶ 198. But their liberty theory fails for the same reason as their property theory: they have "no constitutionally-protected 'liberty or property interest' in . . . a discretionary" immigration benefit. *Hernandez*, 884 F.3d at 112. Once Syria's designation was lawfully terminated, Plaintiffs stood in the position of other noncitizens without lawful status, and "the deportation of an alien who is found to be here in violation of law is not a deprivation of liberty without due process of law." *United States ex rel. Turner v. Williams*, 194 U.S. 279, 290 (1904); *see also Mullin v. Doe*, 146 S. Ct. at 2143 (Thomas, J., concurring) (quoting *Turner* in the TPS context). Plaintiffs have identified no liberty or property interest that the Due Process Clause protects and therefore fail to state a due process claim.[9]

### C. The Individualized Process Plaintiffs Demand Does Not Apply to a Categorical Country Determination.

Even setting the absence of a protected interest aside, the procedural protections that Plaintiffs invoke do not apply to a determination of this kind. Due process "is flexible and calls for such procedural protections as the particular situation demands," *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citation and quotation marks omitted), and it has long distinguished between agency action that "adjudicate[s] disputed facts in particular cases" and action involving "the formulation of a basically legislative-type judgment, for prospective application only," *United*

[9] The analysis is no different for the putative applicant class. *See* Am. Compl. ¶¶ 176, 180. A pending application for a benefit that the Secretary may grant or withhold in her discretion is not a "legitimate claim of entitlement" either. *Roth*, 408 U.S. at 577.

*States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245–46 (1973); *see also Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915). The termination of a TPS designation is a determination of the latter kind: a categorical judgment about conditions in a foreign state and the national interest, applicable to an entire class of nationals, and is not an adjudication of any Plaintiff's particular circumstances. The Due Process Clause does not entitle every affected individual to an individualized hearing before the government adopts a generally applicable policy. *See Air Line Pilots Ass'n, Int'l v. Quesada*, 276 F.2d 892, 896 (2d Cir. 1960) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting. . . . General statutes within the state power are passed that affect the person or property of individuals . . . without giving [them] a chance to be heard." (quoting *Bi-Metallic Inv.*, 239 U.S. at 445; internal quotation marks omitted)); *see also Dawson v. Milwaukee Hous. Auth.*, 930 F.2d 1283, 1286 (7th Cir. 1991) ("[T]he due process clause does not require individual hearings before a governmental body takes decisions that affect the interests of persons in the aggregate.").

Plaintiffs apply the *Mathews* factors as though the termination were an adjudication of their individual circumstances. Pl. Br. 21–22. But Plaintiffs do not address *Bi-Metallic* or explain why the individualized framework set forth in *Mathews* governs a determination such as a TPS designation termination that applies to every Syrian national in the United States. Their further contention that the statutory requirements "protect Plaintiffs' right to a neutral decisionmaker who has not made a prejudged decision," Pl. Br. 22, rests on the same mistake. The Secretary was not adjudicating any individualized claim but rather determining whether the conditions for Syria's

designation "continue to be met," 8 U.S.C. § 1254a(b)(3)(A), a determination the TPS statute assigned to the Secretary.

**D. Plaintiffs Received Whatever Process Was Due.**

Even if the individualized framework in *Mathews* applied, Plaintiffs fail to state a claim because they received whatever process is due. Plaintiffs do not allege that the Constitution requires anything beyond the steps Congress prescribed: the Secretary must consult appropriate agencies, review conditions in the foreign state, and publish notice of the determination and its basis in the Federal Register. 8 U.S.C. § 1254a(b)(3)(A); *see* Pl. Br. 22. The Secretary did so here. *See* 90 Fed. Reg. at 45,399–402.

Plaintiffs' claim is therefore that the Secretary's conduct did not adequately adhere to the statute. But an alleged statutory violation does not necessarily amount to a constitutional procedural due process violation. *See, e.g.*, *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) ("It is equally clear that the violations of agency regulations disclosed by this record do not raise any constitutional questions."); *see also Kopunek v. Dir. of Internal Revenue*, 528 F. Supp. 134, 137 (S.D.N.Y. 1981). An agency's failure to observe statutory procedures gives rise to a statutory claim, not a constitutional one, and Plaintiffs cannot recast a statutory claim as a constitutional due process claim merely by invoking the Due Process Clause. *See Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011) (litigants who have procedural objections should rely on the statute and the regulations rather than "intoning 'due process' in the hope that it will cover all bases"). Plaintiffs do not allege that the Due Process Clause itself, independent of the TPS statute, would require interagency consultation or Federal Register publication before a designation could be

terminated. Their objections go to the Secretary's statutory compliance and to the substance of her determination, not to the denial of any procedure the Constitution guarantees.

Plaintiffs also contend that Defendants "did not publish the true 'basis for the determination.'" Pl. Br. 24. That is an attack on the substance of the Secretary's judgment, and section 1254a(b)(5)(A) does not permit a court to reweigh the considerations Congress committed to the Secretary. Plaintiffs' reliance on this Court's findings at ECF No. 59 does not assist them, because those findings were made under a likelihood-of-success standard in support of an order the Supreme Court reversed. For all these reasons, the due process claim should be dismissed.[10]

## **CONCLUSION**

For the foregoing reasons, the Court should grant the government's motion, dismiss the amended complaint in its entirety or, in the alternative, enter summary judgment for the government, and deny Plaintiffs' motion for partial summary judgment.

[10] The government previously argued that 8 U.S.C. § 1252(f)(1) precludes the relief Plaintiffs seek. See ECF No. 36, at 11–13; 8 U.S.C. § 1252(f)(1) ("[r]egardless of the nature of the action or claim," "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" the relevant provisions of the immigration laws). The Court rejected that argument. *See* ECF No. 59, at 32–33. Given the Court's prior ruling, the government does not repeat this argument here but preserves it for any further proceedings in this Court and for appeal.

Dated: New York, New York
September 11, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York
*Attorney for Defendants*

By: */s/ Mark Osmond*
MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2734/2713
adam.gitlin@usdoj.gov
mark.osmond@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certify that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 8,619 words.