UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAHLIA DOE, *et al.*,

Plaintiffs,

v.

MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity, *et al.*,

Defendants.

Case No. 25 Civ. 8686 (KPF)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR CROSS-MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

JAMES M. MCDONALD
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2734/2713
*Attorney for Defendants*

MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
*Of Counsel*

## TABLE OF CONTENTS

**PAGE**


ARGUMENT ....................................................................................................................... 1

I. Plaintiffs' Statutory APA Claims Is Foreclosed by *Mullin* ........................................... 1

II. The *Ultra Vires* Claim Is Foreclosed by *Mullin* and Fails on the Merits ...................... 1

III. The Equal Protection Claim Is Foreclosed by *Mullin* and Fails on the Merits ............. 3

IV. Plaintiffs' Due Process Claim Is Foreclosed by *Mullin* and Fails on the Merits ........... 8

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Case**

*A.A.R.P. v. Trump*,
605 U.S. 91 (2025) ... 11
*Afr. Cmtys. Together v. Mullin*,
No. 25-cv-13939-PBS, 2026 WL 2274504 n.3 (D. Mass. Aug. 7, 2026) ... 3
*African Communities Together v. Mullin*,
No. 26-cv-10278, 2026 WL 2408737 (D. Mass. Aug. 18, 2026) ... 6, 9, 10
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 3
*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) ... 10
*Bellin v. McDonald*,
177 F.4th 167 (2d Cir. 2026) ... 10
*Bucklew v. Precythe*,
587 U.S. 119 (2019) ... 4
*Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
155 F.3d 603 (2d Cir. 1998) ... 2
*CASA de Maryland, Inc. v. Trump*,
355 F. Supp. 3d 307 (D. Md. 2018) ... 3
*Doe v. Mullin*,
No. 25-cv-15483, 2026 WL 2279577 (N.D. Ill. Aug. 7, 2026) ... passim
*Doe v. Mullin*,
No. 26-cv-2103 (DEH), 2026 WL 3003682 (S.D.N.Y. Oct. 6, 2026) ... 6
*Doe v. Noem*,
No. 26-cv-2103 (DEH), 2026 WL 2085662 (S.D.N.Y. July 20, 2026) ... 4, 5
*Ferreira v. Dosin*,
No. 23-cv-10336 (NSR), 2026 WL 26036 (S.D.N.Y. Jan. 5, 2026) ... 5
*Garcia-Rubiera v. Fortuno*,
665 F.3d 261 (1st Cir. 2011) ... 10
*Goldberg v. Kelly*,
397 U.S. 254 (1970) ... 11
*Hill v. U.S. Dep't of Interior*,
151 F.4th 420 (D.C. Cir. 2025) ... 11
*Int'l Refugee Assistance Project v. Trump*,
961 F.3d 635 (4th Cir. 2020) ... 4
*Kapps v. Wing,*
404 F.3d 105 (2d Cir. 2005) ... 10, 11
*Kentucky Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989) ... 10
*L.M. v. Johnson*,
150 F. Supp. 3d 202 (E.D.N.Y. 2015) ... 5
*L C & S, Inc. v. Warren Cnty. Area Plan Comm'n*,
244 F.3d 601 (7th Cir. 2001) ... 10

*Miot v. Trump*,
No. 25-cv-02471 (D. D. C. Sept. 25, 2026) ..... 5
*Mullin v. Doe*,
609 U.S. 324 (2026) ..... passim
*Nat'l Retail Fed'n v. James*,
806 F. Supp. 3d 427 (S.D.N.Y. 2025) ..... 5
*NIH v. Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025) ..... 2, 4
*Olim v. Wakinekona*,
461 U.S. 238 (1983) ..... 9
*Rajah v. Mukasey*,
544 F.3d 427 (2d Cir. 2008) ..... 5
*Ramos v. Wolf*,
975 F.3d 872 (9th Cir. 2020) ..... 9
*Ramos v. Wolf*,
59 F.4th 1010 (9th Cir. 2023) ..... 10
*Romer v. Evans*,
517 U.S. 620 (1996) ..... 7
*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996) ..... 2
*Singleton v. BOP,*
04-cv-1526 (CPS), 2006 WL 1329712 (E.D.N.Y. May 16, 2006) ..... 6
*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005) ..... 9, 10
*Trump v. Hawaii*,
585 U.S. 667 (2018) ..... 7, 8
*United States v. Afriyie*,
27 F.4th 161 (2d Cir. 2022) ..... 1
*United States v. Suquilanda*,
No. 21-CR-263 (VM), 2021 WL 4895956 n.3 (S.D.N.Y. Oct. 20, 2021) ..... 7
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ..... 6
*Wilkinson v. Austin*,
545 U.S. 209 (2005) ..... 11

**Statutes**

8 U.S.C. § 1103(a)(1) ..... 2, 3
8 U.S.C. § 1254a(a)(1)(A) ..... 9, 10
8 U.S.C. § 1254a(b)(3) ..... 1
8 U.S.C. § 1254a(b)(5)(A) ..... passim
8 U.S.C. § 1254a(g) ..... 5

**Regulations**

68 Fed. Reg. 9824 ..... 3
90 Fed. Reg. 45398 ..... 5

Defendants (the "government") respectfully submit this brief in further support of their motion to dismiss or, alternatively, for summary judgment (Dkt. No. 96 ("Gov't Br.")) and in reply to Plaintiffs' opposition brief (Dkt. No. 99 ("Pl. Opp.")).

## ARGUMENT

### I. Plaintiffs' Statutory APA Claim Is Foreclosed by *Mullin.*

Although the Amended Complaint asserts that the termination of Syria's Temporary Protected Status ("TPS") designation violated 8 U.S.C. § 1254a(b)(3), Am. Compl. ¶ 187(b), Plaintiffs clarify that they are not pursuing "statutory claims for violations of the TPS statute." Pl. Opp. 1 n.1. Thus, any APA claims premised on such alleged violations must be dismissed. Gov't Br. 9–11; *Mullin v. Doe*, 609 U.S. 324, 345 (2026) ("*Mullin*") ("TPS statute's judicial-review bar applies to all non-constitutional claims").

### II. The *Ultra Vires* Claim Is Foreclosed by *Mullin* and Fails on the Merits.

Plaintiffs challenge the Secretary of Homeland Security's termination of Syria's TPS designation as *ultra vires*, contending that TPS authority belongs to the Attorney General. Pl. Opp. 3–11; Gov't Br. 11–15. But the Supreme Court—like all courts to consider the issue (Gov't Br. 14)—has concluded that "[r]esponsibility for TPS decisions rests with the Secretary." *Mullin*, 609 U.S. at 331. Plaintiffs downplay this conclusion as dicta. Pl. Opp. 5. Lower courts, however, must "'accord great deference to Supreme Court *dicta*.'" *United States v. Afriyie*, 27 F.4th 161, 171 (2d Cir. 2022). And this is not mere dicta. The Supreme Court did not simply assume that the Secretary had TPS authority; it said so expressly, cited supporting statutory provisions, and construed 8 U.S.C. § 1254a(b)(5)(A) by substituting "[Secretary of Homeland Security]" for "Attorney General." *Mullin*, 609 U.S. at 331–32, 338–39. Indeed, the Supreme Court's holding—in this very case—rested on the premise that the Secretary's action was within the TPS statute's review bar. A

conclusion necessary to a holding is binding. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (courts are bound by "portions of the opinion necessary to [the] result"); *see also Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 608 (2d Cir. 1998) (statement "necessary to [court's] conclusion" is "hardly *dictum*").

That *Mullin* was decided on review of interim relief (Pl. Opp. 6) is irrelevant because "regardless of a decision's procedural posture, its 'reasoning—its *ratio decidendi*'—carries precedential weight in 'future cases.'" *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring); Gov't Br. 12 (citing additional cases). The government's reading of *Mullin* would not apply the review bar to "*any* official's termination." Pl. Opp. 4. *Mullin*'s holding applies to determinations of the official with "[r]esponsibility for TPS decisions"—the Secretary. 609 U.S. at 331.

Leaving *Mullin* aside, Plaintiffs' statutory interpretation lacks merit. Gov't Br. 13–14. Congress charged the Secretary with the "administration and enforcement" of immigration laws, subject to limited exceptions for "functions . . . conferred upon the . . . Attorney General" and other officials. 8 U.S.C. § 1103(a)(1). Plaintiffs read § 1103(a)(1) to preserve the Attorney General's TPS authority (Pl. Opp. 8–10), but § 1103(g)(1) specifies authorities that are retained, and this specification would be superfluous under Plaintiffs' reading. Gov't Br. 13. Plaintiffs' reading also makes the statute illogical: § 1103(a) would transfer the Attorney General's immigration functions in one breath and reserve them in the next. Far from supporting Plaintiffs' position, the 2003 regulations that Plaintiffs cite (Pl. Opp. 10) expressly disclaim being "any indication that the

Department of Justice [will be] involved in . . . future [TPS] decisions." 68 Fed. Reg. 9824, 9827 (Feb. 28, 2003).[1]

Finally, Plaintiffs have no answer to the futility problem: If a Secretary could not terminate Syria's TPS designation, a Secretary could not designate Syria for TPS either, meaning Plaintiffs' success would eliminate the benefit they seek to preserve. Gov't Br. 14–15. Given "the explicitly temporary nature of the program," *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018), no "reliance interests" (Pl. Opp. 11) would justify preserving a benefit that, by Plaintiffs' account, was unlawfully granted.

## III. The Equal Protection Claim Is Foreclosed by *Mullin* and Fails on the Merits.

Even if Plaintiffs' equal protection claim were reviewable (it is not[2]), the claim cannot survive *Mullin*. The respondents there—including Plaintiffs—supplied a "strong, race-neutral explanation" for the allegedly discriminatory statements and TPS termination: "the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" as evidenced by the former Secretary's allegedly "'preordained decision' to end TPS for all countries." 609 U.S. at 329, 349; *see* Am. Compl. ¶ 77 (discussing administration's "plan to effectively end protection for TPS holders consistent with campaign promises"). Where, as here, an "'obvious alternative explanation'" exists, "discrimination is not a plausible conclusion." *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

---

[1] Plaintiffs suggest that the government's interpretation of § 1103 is inconsistent with the Attorney General's authority over other matters. Pl. Opp. 8. But these matters "are not before the Court." *Afr. Cmtys. Together v. Mullin*, No. 25-cv-13939-PBS, 2026 WL 2274504, at *4 n.3 (D. Mass. Aug. 7, 2026), *appeal filed*, No. 26-1898 (1st Cir. Aug. 10, 2026).

[2] *See Mullin*, 609 U.S. at 351 (Thomas, J., concurring) ("equal protection claim . . . falls within the plain text of § 1254a(b)(5)(A)'s judicial-review bar").

Plaintiffs emphasize that *Mullin* concerned alleged race discrimination and Plaintiffs here also claim discrimination based on national origin and ethnicity. Pl. Opp. 13. But there is "no cogent reason" why these characteristics change the analysis. *Doe v. Noem*, No. 26-cv-2103 (DEH), 2026 WL 2085662, at *2 (S.D.N.Y. July 20, 2026) ("that the claim in *Mullin* was for racial discrimination . . . is not relevant"). The race-neutral explanation that the Supreme Court credited in *Mullin* is just as neutral to ethnicity and national origin.

Plaintiffs downplay *Mullin* because it was decided at the interim-relief stage. Pl. Opp. 13–14. But, again, the reasoning underlying a Supreme Court holding is "just as binding" as the holding itself, *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019), and "regardless of a decision's procedural posture, its 'reasoning . . . carries precedential weight.'" *NIH*, 145 S. Ct. at 2663 (Gorsuch, J., concurring); Gov't Br. 12, 17. Further, the Supreme Court did not merely find that the respondents had failed to carry an interim burden; it deemed their evidence of alleged animus—which was more robust than Plaintiffs' allegations here[3]—"insufficient to show" discrimination given the "strong, race-neutral explanation" respondents themselves raised. *Mullin*, 609 U.S. at 349; *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 639, 653 (4th Cir. 2020) (reversing denial of 12(b)(6) motions where district court improperly concluded that Supreme Court "holding was limited to the review of a preliminary injunction" because the Court's "finding was not stated on a 'likelihood' basis"). That reasoning prevents Plaintiffs from stating a plausible claim under

[3] As in the Yemen case, the allegedly discriminatory statements here "are fewer in number and in some sense less specific (in that they tended to refer to a broader group of people rather than to [Syrians] specifically) than the statements about Haitians in *Mullin*." *Doe v. Noem*, 2026 WL 2085662, at *2; Dkt. No. 59 at 29 (noting lack of "Syrian-specific animus").

Rule 12(b)(6). *See, e.g.*, *Nat'l Retail Fed'n v. James*, 806 F. Supp. 3d 427, 431 (S.D.N.Y. 2025) (dismissing case and denying preliminary relief for the "same reasons").[4]

Plaintiffs emphasize their national origin-based claim, but the former Secretary terminated multiple countries' TPS designations, rendering that theory facially implausible. *See Ferreira v. Dosin*, No. 23-cv-10336 (NSR), 2026 WL 26036, at *7 (S.D.N.Y. Jan. 5, 2026) (granting 12(b)(6) motion where adverse actions against parties outside plaintiff's protected class "undermine[d] . . . inference of discriminatory intent"), *aff'd*, No. 26-228, 2026 WL 2819965 (2d Cir. Sept. 21, 2026). Moreover, "[o]ur immigration laws have distinguished among aliens based on their national origin from the beginning," and nationality-based distinctions are made "as a matter of course." *Mullin*, 609 U.S. at 357 (Thomas, J., concurring). Unsurprisingly, Syrians face certain requirements that nationals from some other countries do not. Pl. Opp. 16. Indeed, nationality-based distinctions are inherent to the TPS statute itself. *See* 8 U.S.C. § 1254a(g) (TPS permits aliens to remain "because of their particular nationality"). In the immigration context, these distinctions are "upheld so long as they are not wholly irrational." *L.M. v. Johnson*, 150 F. Supp. 3d 202, 217 (E.D.N.Y. 2015) (quoting *Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008)). The TPS termination was not "wholly irrational," *id.*, as the Federal Register notice makes clear, 90 Fed. Reg. 45398, 45398–403 (Sept. 22, 2025). And the "substantive merits of the Secretary's determination" are unreviewable in any event. *Doe v. Noem*, 2026 WL 2085662, at *2.

To the extent Plaintiffs seek to establish discrimination based on alleged procedural errors and departures from past practices (Pl. Opp. 15–16), *Mullin* held that "the process that led to [the

[4] Plaintiffs state that "the Haitian plaintiffs continue to litigate equal protection claims," but a briefing schedule for the Government's motion for judgment on the pleadings is in place. *Miot v. Trump*, No. 25-cv-02471, Dkt. No. 148 (D.D.C. Sept. 25, 2026).

Secretary's] final decision to terminate" is barred from judicial review. 609 U.S. at 339. And while deviations from an agency's "normal procedural sequence" can sometimes be probative of discrimination, that is only true when the deviations suggest that the challenged decision was handled differently because of discrimination. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977). Across-the-board departures—which Plaintiffs allege here—carry no such implication. *See id.* at 270 (policy was "applied . . . too consistently for us to infer discriminatory purpose"); *cf. Singleton v. BOP*, No. 04-cv-1526 (CPS), 2006 WL 1329712, at *9 (E.D.N.Y. May 16, 2006) (where an agency's policy was "allegedly ignored in regard to both plaintiff and" a comparator, the departure "cannot serve as evidence of discriminatory intent or pretext"). Here, Plaintiffs point to similar alleged departures in the TPS terminations of many countries that lack Plaintiffs' ethnic characteristics—such as Venezuela, Haiti, Cameroon, Nepal, Honduras, Nicaragua, South Sudan, Burma, and Ethiopia. Am. Compl. ¶¶ 81–104. Indeed, this Court deemed the alleged "procedural errors . . . virtually identical." Dkt. No. 59 at 13. The alleged departures therefore raise no inference of discrimination; Syria was treated like many other countries whose designations were terminated.

Plaintiffs rely on two district court decisions that denied motions to dismiss equal protection claims: *African Communities Together v. Mullin*, No. 26-cv-10278, 2026 WL 2408737, at *6 (D. Mass. Aug. 18, 2026), and *Doe v. Mullin*, No. 25-cv-15483, 2026 WL 2279577, at *10 (N.D. Ill. Aug. 7, 2026) ("*Doe*"). Pl. Opp. 14. *African Communities Together* adopted *Doe*'s reasoning without additional analysis. 2026 WL 2408737, at *6–7.[5] *Doe* doubted its own

---

[5] Similarly, a court in this District recently dismissed every claim except a discrimination claim in another TPS case, relying principally on *Doe* and *African Communities Together*. *See Doe v. Mullin*, No. 26-cv-2103 (DEH), 2026 WL 3003682, at *1–5 (S.D.N.Y. Oct. 6, 2026).

conclusion, acknowledging that "the Supreme Court's reasoning . . . suggests that it might not be so limited by its procedural posture." 2026 WL 2279577, at *11. It then certified the question for interlocutory appeal, citing a "substantial ground for difference of opinion." *Id.* The court harbored these doubts, even without the benefit of the above arguments: it never considered, for example, the existence of an "obvious alternative explanation" requiring dismissal under *Iqbal*. *See* Pl. Opp. 6 (noting the "expedited briefing" in these cases).

Even though *Doe* declined to dismiss the equal protection claim, it rejected the *Romer v. Evans*-based theory that Plaintiffs also raise here. 2026 WL 2279577, at *12 (quoting *Romer v. Evans*, 517 U.S. 620, 635 (1996)); Pl. Opp. 12. *Romer* is a rational-basis case: the Supreme Court applied the rule that where a government action "neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the . . . [action] so long as it bears a rational relation to some legitimate end." 517 U.S. at 631. Courts "hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." *Trump v. Hawaii*, 585 U.S. 667, 705 (2018) (*Romer* was one of "few occasions" where the Supreme Court did so). Nevertheless, under *Romer*, "'a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest'" under rational-basis review. 517 U.S. at 631.

Here, because this Court preliminarily adopted the more demanding *Arlington Heights* framework, the government has assumed *arguendo* that, unlike in *Romer*, rational-basis review does not apply. Gov't Br. 16 n.5.[6] To the extent the Court applies rational-basis review, Plaintiffs'

[6] By assuming that the more rigorous *Arlington Heights* standard applied (as *Mullin* did), the government did not concede, as Plaintiffs suggest (Pl. Opp. 12) that the weaker theory stated a claim. *United States v. Suquilanda*, No. 21-CR-263 (VM), 2021 WL 4895956, at *5 n.3 (S.D.N.Y. Oct. 20, 2021) ("Because the Court would reject [defendant]'s argument under the strict standard

equal protection claim fails because "[i]t cannot be said that it is impossible to 'discern a relationship to legitimate state interests' or that the [TPS termination] is 'inexplicable by anything but animus.'" *Hawaii*, 585 U.S. at 705–06 (government action withstands rational-basis review "so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds"). Terminating temporary humanitarian relief under the statute's review criteria is rationally related to legitimate purposes, as "there is a distinction between bare desire to harm TPS holders and animus against TPS policy (and immigration as a whole)." *Doe*, 2026 WL 2279577, at *12. Moreover, the Secretary here found "significant public safety and national security risks associated with the continued [TPS] designation" given Syria's past support for terrorism and the inability of the United States to "adequately vet Syrian nationals." 90 Fed. Reg. at 45401. The Secretary also described "compelling foreign policy reasons" for ending the designation, noting that "broader diplomatic engagement with Syria's transitional government" would be "complicate[d]" by extending the TPS designation. *Id.* at 45401–02. The Secretary's decision easily withstands *Romer*-based review. *See, e.g.*, *Hawaii*, 585 U.S. at 706 (reversing interim order that enjoined executive order that banned travel from select countries, including Syria, where countries "were previously designated . . . as posing national security risks").

## IV. Plaintiffs' Due Process Claim Is Foreclosed by *Mullin* and Fails on the Merits.

Section 1254a(b)(5)(A) bars Plaintiffs' due process claim. Plaintiffs do not deny that this claim is premised on the same alleged statutory departures that the Supreme Court held were barred from judicial review in *Mullin*. *See* 609 U.S. at 339 (statutory bar applies to all "steps [that] were

of *Arlington Heights*, the Court need not conclude which level of review applies."), *aff'd*, 116 F.4th 129 (2d Cir. 2024).

part of the process that led to" TPS terminations). Indeed, Plaintiffs admit that the process they seek is what the TPS statute provides. Pl. Opp. 25 (arguing that their due process claim turns on whether "Defendants either did or did not comply with the statutory process"). Relabeling their statutory APA claim as a due process claim is the kind of "creative pleading" that *Mullin* warned against and that courts do not allow. Gov't Br. 20 (citing cases).[7]

Plaintiffs also fail to identify a protected interest to support their claim. Gov't Br. 21–24. The claim is premised on the Secretary's alleged failure to adhere to the TPS statute's procedural requirements. Am. Compl. ¶ 199; Pl. Opp. 25. But "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 764 (2005) ("[E]ntitlement to nothing but procedure" cannot "be the basis for a property interest.").

Plaintiffs argue that the "continuation of" TPS benefits is a protected interest. Pl. Opp. 21 (emphasis omitted). But TPS benefits are designed only "to afford 'temporary' relief," *Mullin*, 609 U.S. at 332, and the benefits last only as long as "[TPS] status is in effect." 8 U.S.C. § 1254a(a)(1)(A). Whether the status continues depends on discretionary judgments by the Secretary applying open-ended standards, such as whether "extraordinary and temporary conditions" prevent nationals from "returning to the[ir] state in safety" and whether permitting them to remain is in the United States' "national interest." *Id.* § 1254a(b)(1)(C), (b)(3)(A); *Ramos v. Wolf*, 975 F.3d 872, 891 (9th Cir. 2020) (TPS statute "sets forth very few legal parameters"),

[7] Plaintiffs rely on the decisions issued in other TPS cases (Pl. Opp. 19–20 & n.5), but while those courts declined to apply § 1254a(b)(5)(A)'s judicial review bar to due process claims, all those cases rejected the claims on the merits. *See, e.g.*, *Doe*, 2026 WL 2279577, at *10 ("dismiss[ing] the plaintiffs' due process claim"); *Afr. Cmtys. Together*, 2026 WL 2408737, at *6 ("Plaintiffs have failed to state a procedural due process claim").

*reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023). Whatever "unilateral expectation" they may have, Plaintiffs do not have a "claim of entitlement" to TPS benefits. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). *Bellin v. McDonald*, which Plaintiffs cite (Pl. Opp. 21), confirms the point, stating that there is no protected interest where the "prescribed criteria are open-ended and subjective" rather than "determinate and well-defined." 177 F.4th 167, 181–82 (2d Cir. 2026) (quotation marks omitted); *see also Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989) (no protected interest when there is an absence of "substantive limitations" on discretion). *Kapps v. Wing*, also cited by Plaintiffs (Pl. Opp. 20, 22), turned on the absence of discretion: "there has been no intimation in the course of this litigation that discretionary factors enter into the determination." 404 F.3d 105, 114 (2d Cir. 2005). The TPS statute, by contrast, commits the designation to the Secretary's judgment. 8 U.S.C. § 1254a(a)(1)(A) (Secretary "may grant"); *see also Castle Rock*, 545 U.S. at 756 ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

The procedural protections that Plaintiffs invoke apply to individual adjudications—not to categorical, legislative-type judgments about conditions in a foreign state that apply prospectively to a large class of foreign nationals. Gov't Br. 24–26; *Afr. Cmtys. Together*, 2026 WL 2408737, at *6 (due process claim resembles "challenge to a 'generally-applicable' agency action"). Plaintiffs' cases confirm that whether government action is legislative or adjudicative turns on whether it applies generally or to particular individuals. *L C & S, Inc. v. Warren Cnty. Area Plan Comm'n*, 244 F.3d 601, 604 (7th Cir. 2001) ("Not the motive or stimulus, but the generality and consequences, of an enactment determine whether it is really legislation or really something else"); *Garcia-Rubiera v. Fortuno*, 665 F.3d 261, 272 (1st Cir. 2011) (distinguishing between "generally-

applicable legislative action" and "individual adjudications, which require more specific procedures"); *Hill v. U.S. Dep't of Interior*, 151 F.4th 420, 434 & n.6 (D.C. Cir. 2025) (Secretary of Interior's statement under "duly enacted statute" was "not an adjudication" because there were no "individualized determinations about property rights"). And the cases Plaintiffs cite involving "large groups of individuals" (Pl. Opp. 24) are not to the contrary. Each involved policies that affected many people, but, unlike here, the question was what process was due before the government took action against a particular person. *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025) (detainee must have "sufficient time and information to" seek habeas relief before removal); *Wilkinson v. Austin*, 545 U.S. 209, 220 (2005) (considering "what process an inmate must be afforded" before placement at Supermax prison); *Goldberg v. Kelly*, 397 U.S. 254, 255 (1970) (considering whether termination of benefits "to a particular recipient without . . . an evidentiary hearing . . . denies the recipient procedural due process"); *Kapps*, 404 F.3d at 118 (low-income energy program applicants were entitled to "notice of the reasons for the agency's preliminary determination, and an opportunity to be heard in response").

Plaintiffs here received whatever process was due. Gov't Br. 26–27. "The core of due process is notice and an opportunity to be heard." *Doe*, 2026 WL 2279577, at *10. As in *Doe*, Plaintiffs "do not claim that they were entitled to hearings before the Secretary's decision to terminate TPS." *Id.* And the decision terminating their TPS benefits "was published in the federal register, providing notice." *Id.* Though Plaintiffs argue that "the rationale in the federal register was not the *actual* basis for the decision" (*id.*; *see* Pl. Opp. 25), "that amounts to a challenge to the merits of the decision or APA review—both barred after *Mullin*—not a due process claim." *Doe*, 2026 WL 2279577, at *10.

## CONCLUSION

For these reasons and those set forth in its opening brief, the Court should grant the government's motion, dismiss the Amended Complaint in its entirety or, in the alternative, enter summary judgment for the government, and deny Plaintiffs' motion for partial summary judgment.

Dated: New York, New York
October 9, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York
*Attorney for Defendants*

By: */s/ Mark Osmond*
MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2734/2713
adam.gitlin@usdoj.gov
mark.osmond@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certify that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,497 words.